IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| JOHN DOE 2, by and through his Father and Next Friend, JOHN DOE 1,<br><br>Plaintiff,<br><br>v.<br><br>THE FAIRFAX COUNTY SCHOOL BOARD, FAIRFAX COUNTY PUBLIC SCHOOLS, JOHN BANBURY, EILEEN HOPPOCK, and NANCY KRELOFF, *employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally,*<br><br>**Defendants.** | Civil Action No._____ |

## COMPLAINT AND JURY DEMAND

Plaintiff John Doe 2, a minor, by and through his father and next friend, John Doe 1[1], states as follows for his complaint against the defendants:

### The Parties and Jurisdiction

1. Plaintiff John Doe 2 was a student at Lake Braddock Secondary School, located in Fairfax County, Virginia.

2. Defendant Fairfax County School Board ("Board") is vested with the

---

[1] Due to the nature of the allegations and because both Mr. Doe 2 and many of the witnesses referenced in this complaints are minors, Mr. Doe 1 and Mr. Doe 2 are proceeding under pseudonyms to protect Mr. Doe 1's privacy and out of fear of retaliation. In using a pseudonym, Mr. Doe 2 relies upon the factors set out in *Co. Doe v. Pub. Citizen*, 74. F.3d 246 (4th Cir. 2014).

1

authority to supervise the public schools of Fairfax County, Virginia.

3. Defendant Fairfax County Public Schools ("FCPS") is the public school system for Fairfax County, Virginia.

4. Defendant John Banbury was the Interim Principal of Lake Braddock Secondary School.

5. Defendant Eileen Hoppock is the Assistant Principal of Lake Braddock Secondary School.

6. Defendant Nancy Kreloff was a Hearing Officer for the Division Superintendent.

7. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because plaintiffs' claims arise under the United States Constitution – brought pursuant to 28 U.S.C. § 1983 – and under the laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-88. The state law claims are so closely related to the federal claims as to form the same case or controversy under Article III of the United States Constitution.

## The Facts and Allegations

8.  Doe 2 is a 16-year-old sophomore at Lake Braddock Secondary School with a 4.1 grade point average who was active in extracurricular activities ranging from drama club to the crew team. Doe 2's teachers consistently reported that he was a stellar student with no disciplinary problems and in fact he had never been disciplined or referred for discipline before the events at issue.

9.  On February 12, 2018, three female students colluded with each other and approached a vice principal and, in each other's presence, accused Doe 2 of inappropriate behavior. Two of the female students accused Doe 2 of touching them inappropriately and making sexually explicit comments. A third female student accused Doe 2 of making sexual gestures and sexually explicit comments. The three students each wrote a Statement of Facts, each approximately a paragraph long.

10. On February 15, 2018, Doe 2 was pulled out of class and confronted with the allegations made against him:

   a. Student A alleged that on February 6, 2018, Doe 2 grabbed her bottom, touched her crotch and showed his penis to her while they were in the library ("Library Incident"); she later recanted much of her story.

   b. Student B alleged that Doe 2 "nugged me in the side of my breast . . ." and that he "tapped/put his hand on my hip/butt." This touching, which Doe 2 denies, allegedly happened in Spanish class

("Spanish Class Incident"). Student B also alleged that Doe 2 was involved in conversations with her and others during which women's bodies were discussed, and that Doe 2 made sexually explicit comments during these conversations. Specifically, Student B alleged that, when discussing her fake fingernails, Doe 2 stated "you[']d cut yourself if you fingered yourself with those nails" ("Fingernail Joke").

c. Student C alleged that one day during crew practice Doe 2 grabbed his genitals through his spandex ("Crew Practice Allegations") and made sexual statements about women. Specifically, Student C alleges that Doe 2 asked her "how a girl doesn't orgasm when she puts a tampon in" ("Tampon Joke").

11. While Doe 2 admitted that he accidently touched Student A, he denies that the touching was intentional or that he grabbed her bottom or exposed his genitals.

14. Doe 2 denies touching Student B. Doe 2 admitted making the Fingernail Joke, which was made in a conversation during which Student B was showing her fingernails to Doe 2 and he repeated a joke that he heard another student make during crew practice.

15. Doe 2 admits making the Tampon Joke. The joke was made in a conversation in which a female friend asked another female friend for a tampon in front of Doe 2. Neither of these female friends is Student C. To the best of Doe 2's knowledge, no one else was present. If Student C heard the joke it was

only because it was passed on to her by another student or because she was eaves-dropping on a conversation to which she was not a party. The Tampon Joke was not disruptive when it was made by Doe 2 and it was protected speech.

16. Without providing Doe 2 with any due process protections, and solely as a result of the three students' accusations, Doe 2 was suspended for ten days starting on February 15, 2018.

## The Hearing

17. After Lake Braddock officials suspended Doe 2, they began a limited and inadequate investigation of the three students' allegations, culminating in a March 9, 2018 hearing. The hearing officers were Nancy Kreloff and J.D. Anderson; Doe 2 attended along with counsel and his parents.

18. The evidence presented at the hearing included the second-hand accounts of the accusing students, as presented by two school employees, Eileen Hoppock, Assistant Principal, and Laura Waterman, Associate Principal, and the three short statements of facts written by the three female students. Ms. Hoppock clarified during the hearing that Student A changed her allegations and recanted her claim that Doe 2 exposed his genitals during the alleged Library Incident.

19. There were other students in the library during the Library Incident, none of whom were as interviewed. Indeed, there was a library sign-in sheet that was not reviewed in any attempt to find witnesses to the alleged incident. Doe 2 testified that, during his interaction with Student A, she pushed him,

and she also touched him. According to Doe 2, they were mutually engaging in playful behavior and poking each other. The accidental touching by Doe 2 occurred only because Student A lost her balance. There was no consideration given by the defendants to the appropriateness of Student A touching Doe 2 and Student A was not disciplined for touching Doe 2.

20. The Crew Practice Allegation supposedly took place in front of a boat of eight students, none of whom were interviewed or reported the incident. The crew coaches informed the school that they were unaware of any of these incidents or issues. Indeed, during the three-week period when the Crew Practice Allegation was to have occurred, Doe 2 was absent for two of the three weeks of crew training due to an injury. Moreover, three female students were overheard in the hallway at school discussing how to get Doe 2 kicked off the crew team, showing a motive to lie about Doe 2's actions.

21. The statements of two male witnesses were also presented at the hearing. Those students allegedly corroborated some allegations against Doe 2. The statements, however, were unreliable. One of the students, Student D, was the brother of Student A. The other, Student E, was Student D's close friend. Student E was a crew rival of Doe 2 and had an incentive to have Doe 2 removed from the Lake Braddock crew team. They did not provide any specific facts relating to Doe 2's actions. Mr. Anderson later clarified that neither male witness actually saw any physical touching that would constitute harassment and that he did not know if the male students had witnessed any of actions by Doe 2 or if they had heard the allegations from others.

22. The Tampon Joke and Fingernail Joke were made in the context of conversations where the female students were discussing their bodies in front of Doe 2. There is no evidence that he made these comments outside the context of those conversation. Indeed, there was no evidence that Student C was even present during these conversations.

23. There were individuals who were identified as witnesses to every encounter that involved the three female students but the defendants neither interviewed nor even contacted any of them. Despite the lack of corroboration and Student A admitting to being untruthful as to part of her statement, the hearing officers found the three female students to be credible.

24. Ms. Kreloff clearly discounted Doe 2's testimony without basis or support. When Doe 2 said that the discussions over female bodies were among the males on the crew team and he stated that everyone participated, Ms. Kreloff stated, without factual support, "[e]verybody does it[?] I don't think everybody does it."

25. At the hearing, Doe 2 also provided the results from a Psychosexual Risk Assessment, two polygraph reports, and character reference letters.

26. Dr. Lisa Hunt, who performed the Psychosexual Risk Assessment, reported that Doe 2 "presents with minimal risk factors, clearly placing his risk at the lowest end of the spectrum and not markedly different from someone about whom no concerns had been raised." Moreover, Dr. Hunt stated that Doe 2's conduct is "better characterized as the byproduct of some misjudgment and trying to navigate the often complicated social and sexual challenges of

7

adolescence."

27. Doe 2 passed both polygraphs which showed that he was truthful in his recounting of his encounters with the three female students. His answers to the questions matched his recounting of the events to the Hearing Officer.

28. The hearing proceeded with unnecessary haste and witnesses were inappropriately interrupted by the hearing officers in such a manner as to show that the hearing officers were biased against Doe 2 and had prejudged the evidence against him. For example, Ms. Kreloff interrupted and cut-short Doe 1 when he was attempting to present testimony and refused to listen to any further evidence from Doe 1 regarding Doe 2. The hearing's unnecessary haste resulted in inaccurate findings.

## **The Decision**

29. On March 23, 2018, over a month after Doe 2 was first suspended, Ms. Kreloff issued a decision finding that Doe 2 had committed serious repeated offenses in violation of School Board policy by engaging in improper and offensive touching of female students and sexual harassment of female students.

30. Doe 2 was found responsible for violation of the student code of conduct contained within the Student Rights and Responsibilities by engaging in improper and offensive touching of female students and sexual harassment of female students.

31. In her findings, Ms. Kreloff did not address of any of Doe 2's evidence, including the polygraph results.

32. To sanction Doe 2, FCPS reassigned him to an alternative educational setting within FCPS's system.

33. On April 12, 2018, the Board denied Doe 2's appeal of the disciplinary decision of the Superintendent's Hearing Officer for violating school rules.

34. Defendants have caused and are causing irreparable damage to Doe 2's reputation, education, and future learning opportunities.

**COUNT I**
**(Violation of Title IX under 20 U.S.C. § 1681)**

35. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

36. FCPS receives federal funding.

37. Because it receives federal funding, FCPS is subject to the requirements of Title IX.

38. Title IX prohibits discrimination in the education setting based on a student's gender. Unlawful gender discrimination also occurs when a high school disciplines a student based on improper assumptions about gender roles.

39. FCPS treated Doe 2 differently due to his gender when he was punished for touching a female student when the same female student also touched him.

40. FCPS treated Doe 2 differently due to his gender when he was punished for making sexual comments in front of female students when the same female students discussed their bodies in front of him.

41. Moreover, FCPS acted in the shadow of (1) Office of Civil Rights ("OCR") investigations into how schools handle allegations of sexual assault; and, (2)

innumerable reports covered in the national media that suggest the pervasive nature of sexual assault committed by male students on campuses throughout the nation. As a reaction to the scrutiny of these OCR investigations and national stories, and in order to be perceived as aggressively addressing the perceptions that sexual assault against female students is rampant on campuses, FCPS treats male students accused of sexual misconduct by female students more aggressively than it otherwise would, and more aggressively than it would treat similar complaints made by male students against female students.

42. FCPS refused to believe Doe 2 because he is male and would have believed a female student in the same situation.

WHEREFORE, plaintiff prays for judgment as set forth herein.

## COUNT II
**(Violation of the First Amendment pursuant to 42 U.S.C. § 1983)**

43. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

44. The First Amendment to the United States Constitution states that "Congress shall make no law . . . abridging freedom of speech."

45. The First Amendment protections to speech apply in a high school setting.

46. Defendants violated Doe 2's First Amendment rights by punishing him for his speech, specifically the Tampon Joke.

47. Doe 2's Tampon Joke was not disruptive to the school environment.

48. Moreover, the FCPS's sexual harassment policy violates the First Amendment by prohibiting any conduct that creates an "offensive environment." This policy is unconstitutional as it is overly broad and vague.

WHEREFORE, plaintiff prays for judgment as set forth herein.

## COUNT III
### (Violation of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983)

49. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

50. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."

51. Public school students have a property and liberty interest in their education.

52. Defendants denied Doe 2's due process rights when they suspended him for 10 days without a hearing and conducted a biased and incomplete investigation and a biased hearing.

53. Defendants denied Doe 2's due process rights when they sanctioned him without considering the exculpatory evidence he provided, specifically when defendants failed to consider the polygraph results.

54. Defendant Ms. Kreloff demonstrated her bias when she discounted Doe 2's statements without any evidence. As a result of Ms. Kreloff's bias, Doe 2 never received a fair hearing.

55. Ms. Kreloff denied Doe 2 a fair hearing when she cut off Doe 1's attempt to testify on behalf of Doe 2 and to provide additional evidence to her.

56. As a result of these due process violations, Doe 2 was suspended and then reassigned to an alternative learning center as a probationary student.

WHEREFORE, plaintiff prays for judgment as set forth herein.

## COUNT IV
### (Violation of the Due Process Clause of the Virginia Constitution)

57. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

58. The Virginia Constitution states that "no person shall be deprived of his life, liberty, or property without due process of law." Va. Const. art I § 11. For the reasons stated under Count III, defendants deprived John Doe 2 of his liberty and property interest in his education without due process of law.

WHEREFORE, plaintiff prays judgment as hereinafter set forth.

## COUNT V
### (Violation of the Free Speech Clause of the Virginia Constitution)

59. Plaintiff incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

60. The Virginia Constitution states that "the General Assembly shall not pass any law abridging the freedom of speech. . . ." Va. Const. art I § 12.

61. For the reasons stated under Count II, defendants violated Doe 2's right to free speech.

WHEREFORE, plaintiff John Doe 2 prays that judgment be entered in his favor for:

(1) Preliminary and permanent injunctive relief restraining defendants from
   (a) continuing to enforce any punishment against John Doe 2, and (b)

noting the Hearing Officer's findings and sanctions on his academic record or transcript;

(2) Damages in an amount to be proven at trial;

(3) Attorneys' fees pursuant to 42 U.S.C. § 1988; and

(4) Costs and such further relief as is just and equitable.

## Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

DATED: July 6, 2018

Respectfully submitted,

By: _____
Jesse R. Binnall
Louise T. Gitcheva
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, Virginia 22314
Telephone: (703) 888-1943
Facsimile: (703) 888-1930
Email: jbinnall@harveybinnall.com
lgitcheva@harveybinnnall.com