UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| JOHN DOE 2, by and through his Father and Next Friend, JOHN DOE 1, | . | Civil Action No. 1:18cv846 |
| | . | |
| Plaintiff, | . | |
| | . | |
| vs. | . | Alexandria, Virginia |
| | . | September 7, 2018 |
| THE FAIRFAX COUNTY SCHOOL BOARD, FAIRFAX COUNTY PUBLIC SCHOOLS, JOHN BANBURY, EILEEN HOPPOCK, and NANCY KRELOFF, employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally, | . | 10:23 a.m. |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . | . | |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

FOR THE PLAINTIFF:                    JESSE R. BINNALL, ESQ.
                                      Harvey & Binnall, PLLC
                                      717 King Street, Suite 300
                                      Alexandria, VA 22314

FOR THE DEFENDANTS:                   MICHAEL E. KINNEY, ESQ.
                                      Turner & Kinney, P.C.
                                      20 West Market Street
                                      Leesburg, VA 20176

OFFICIAL COURT REPORTER:              ANNELIESE J. THOMSON, RDR, CRR
                                      U.S. District Court, Third Floor
                                      401 Courthouse Square
                                      Alexandria, VA 22314
                                      (703)299-8595

(Pages 1 - 17)
COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

1              P R O C E E D I N G S

2              THE CLERK:  Civil Action 18-846, John Doe No. 2 v.

3    The Fairfax County School Board, et al.  Would counsel please

4    note their appearances for the record.

5              MR. BINNALL:  May it please the Court.  Jesse Binnall

6    on behalf of John Doe No. 2.

7              THE COURT:  Good morning.

8              MR. KINNEY:  Good morning, Your Honor.  Michael

9    Kinney on behalf of the defendants.

10             THE COURT:  I was very happy to see the two of you

11   smiling collegially at each other.  You know, I wish there were

12   a way we could sit you-all down and work out some kind of a, of

13   a way of giving some remedy to the, to the juvenile in this

14   case.

15             Has there been any discussion and is there any

16   possibility of working something out in this case?  Because the

17   legal hurdles are tough for the plaintiffs, all right?  And

18   this involves, you know, he's now -- is he 17 yet, the John

19   Doe?

20             MR. BINNALL:  I believe he's 16, Your Honor.

21             THE COURT:  He's 16, all right.

22             MR. BINNALL:  Right in that 16-17 area.

23             THE COURT:  Yeah.  I mean, you know, look, we're

24   dealing with someone who was what, a sophomore when this

25   occurred?

1          MR. BINNALL:  Yes, Your Honor.

2          THE COURT:  So he is starting his junior year.

3          MR. BINNALL:  Yes, ma'am.

4          THE COURT:  All right.  And I understand he's now in

5    a new high school, not in the alternate -- in the alternative

6    high school, right?

7          MR. BINNALL:  That's right, Your Honor.

8          THE COURT:  It's not his home base high school?

9          MR. BINNALL:  It is not, Your Honor.

10         THE COURT:  All right.  Does he drive, or does his

11   family have to transport him to --

12         MR. BINNALL:  My understanding is his family is

13   actually transporting him right now on --

14         THE COURT:  Yeah.

15         MR. BINNALL:  -- through their, their own means.

16         THE COURT:  Yeah.  It's a very sad case, it's a very

17   troubling case, and it's obviously a very current case.  But

18   has there been any effort to try to see if there's a

19   resolution?  Mr. Kinney?

20         MR. KINNEY:  Your Honor, there has not been.

21         THE COURT:  Have you handled more of these cases?  I

22   mean, do you represent the School Board in these types of

23   cases?

24         MR. KINNEY:  I represent the School Board generally.

25   This is my first Title IX case, Your Honor.

1           THE COURT:  It's the first one of this type that I've

2    had, and, and, you know, you can understand, I mean, it's a really

3    difficult situation because the schools absolutely have an

4    obligation to avoid any kind of harassing environment or

5    threatening environment for any student, and yet one would have

6    to be an idiot not to recognize, especially for young

7    teenagers, that, you know, they're interested in sex, they are

8    foolish in how they act, they can have grudges.

9           You know, all of us were teenagers at one time and

10   can think back to our lives in high school.  And the

11   implications for this type of discipline on this young man's

12   record will go with him for some time.

13          I, you know, I don't know what the impact is with

14   college admissions when they look at something like this.  I

15   don't know how it shows up on the record.  I mean, that's part

16   of the issue that the plaintiff has raised in the complaint,

17   but there are, you know, lasting consequences from a, you know,

18   foolish adolescent activity, you know, that could have a

19   long-term impact on his life.

20          At the same time, for the, for the girls who felt

21   intimidated or mistreated by his conduct, I understand that for

22   them, too, it can have some kind of an effect, although theirs

23   is a bit different because it's not showing up, as I

24   understand, on any record.

25          The other thing that bothers me about this case --

1    I'm giving you a long spiel about it because I think the law is

2    one thing and the Court's view of it may be different -- I'm

3    very troubled as a fact finder with the first girl's complaint

4    because this is a, you know, there was a serious allegation by

5    her about the exposure, all right, and then she retracts it.

6         Now, in any other evidentiary context, a witness or

7    victim who makes that strong an allegation of misconduct and

8    then retracts it becomes inherently incredible, and at the very

9    least, there would have to have been in my view, and if I were

10   conducting an evidentiary hearing in this kind of a setting, I

11   would have made sure that that credibility of that witness was

12   very carefully vetted, and I would be inclined not to believe

13   that particular witness because that's a pretty serious -- we

14   don't know from this record, you know, well, why did she say

15   that in the first place?  Then why did she admit that she had

16   not said it?

17        So there are troubling things in this record, and --

18   anyway, you were going to tell me that you have had a little

19   bit of experience, though, with the School Board.

20        MR. KINNEY:  Yes.  Yes, Your Honor.  And if I may

21   just address that last, last point?

22        THE COURT:  Yes.

23        MR. KINNEY:  Even if that first student's accusation

24   was completely disregarded, there were at least six other

25   students that supported this finding and the plaintiff's own

1  admissions.

2        THE COURT:  Okay.  There's no question on this record

3  that the boy said those very offensive things that he said.  I

4  mean, he admits it, which gives him some credibility, too, by

5  the way.  It's like a criminal defendant who comes in and says:

6  Yes, Judge, I sold the cocaine, and I sold the marijuana, but I

7  didn't sell the heroin.

8        You know, you start to believe somebody like that, I

9  mean, admitting that.  So he admitted the statements, and that

10  was a question I had for you.  If there were no touching, would

11  the School Board have issued the same type of discipline if it

12  were just the statements?

13        MR. KINNEY:  I -- Judge, I don't know that I can

14  credibly say one way or the other, but, but we have a principal

15  who's confronted by three young women making this accusation,

16  and then those accusations were explained to the plaintiff, and

17  he admitted to some of them, he denied others of them, and it

18  was within the principal's discretion, if you will, on the

19  ground at the time, after explaining the charges, as I said,

20  after getting the plaintiff's responses to those charges, to,

21  to impose up to ten days' suspension.

22        So, you know, without, without the touching, I just

23  don't know, but I think given what -- given the words that the

24  plaintiff has admitted he said to at least two other female

25  students, the principal could very well have imposed a ten-day

1    suspension at the time.

2           THE COURT:  Yeah.  All right.  And you're not aware

3    of any -- I mean, let me hear from plaintiff's counsel.

4           Mr. Binnall, what is your understanding of how these

5    types of incidents stay on a student's record?

6           MR. BINNALL:  Your Honor, my understanding is they do

7    stay on the record, but there's something even more important

8    than staying on the record, and that is, what students are

9    obligated to answer truthfully when they apply to colleges.

10   The, the uniform college admission forms recently changed, and

11   they, quote-unquote, banned the box when it comes to criminal

12   convictions, but they still ask about other disciplinary

13   matters, and so it's actually not hyperbole to say for getting

14   into colleges, this is actually now worse than a criminal

15   conviction because colleges and other employers down the line

16   are going to be asking and will ask him if he has been found

17   responsible for something like a Title IX violation.  He will

18   be bound to say yes to answer truthfully.

19          And with that being as it is right now, that is

20   probably his biggest hurdle going forward for how this will

21   affect his, his career unless we can find some way to first of

22   all say that the proper processes in Title IX and the other

23   constitutional safeguards that we've, that we've pled were not

24   protected here unless, of course, the parties are able to work

25   out some other sort of solution.

1            And I think there are creative things that can be

2     done with this.  I think there would be no reason why we

3     couldn't work with a magistrate judge and try to see if we can

4     put our heads together and come up with other solutions.  We

5     would be willing to do that.

6            THE COURT:  What's the status of the state court

7     proceeding?  Because you've taken an appeal, right, to the

8     Fairfax Circuit Court?

9            MR. BINNALL:  That's right, Your Honor.

10            THE COURT:  Which judge has the case at this point,

11     do you know?

12            MR. BINNALL:  Judge Garner has a motion to stay

13     pending before him.

14            THE COURT:  Because of this case?

15            MR. BINNALL:  Yes, Your Honor.  And that's -- the

16     issue really before Judge Garner on that is efficiency --

17     judicial efficiency and efficiency of the parties, is if we are

18     successful in this case, there won't be any need to do that,

19     but the opposite is not true.  Even if we lost in that case,

20     the standard -- the statutory standard being what it is, we

21     would still be able to proceed with this case.

22            THE COURT:  And exactly what is the cause of action

23     in the, in the circuit court?  Is it like an administrative

24     review that this Court would do an APA type of review?

25            MR. BINNALL:  Yes, Your Honor.

1          THE COURT:  So it's what, abuse of --

2          MR. BINNALL:  Abuse of discretion.

3          THE COURT:  Arbitrary and capricious?

4          MR. BINNALL:  Arbitrary and capricious or abuse of

5    discretion, I think, is the, the buzz words that the, that the

6    statute uses in order to look at that.  So in other words, just

7    because something is not arbitrary and capricious, you know,

8    when you're limited to the record as it is, when you're not

9    able to go outside of the record as we are in the 1983 action,

10   as we are in the Title IX claim.

11         THE COURT:  Were you the attorney of record below?

12   Did you represent the plaintiff, John Doe, at the proceedings?

13         MR. BINNALL:  No, Your Honor, I did not.  I was

14   brought in for the litigation afterwards.  So I am counsel of

15   record on the appeal in circuit court in Fairfax.  I was not

16   counsel at the, at the school --

17         THE COURT:  But the parents did have counsel.  The

18   boy did have an attorney, right?

19         MR. BINNALL:  They did, Your Honor, yes.

20         THE COURT:  Do you know how -- is there a transcript

21   of the hearing?

22         MR. BINNALL:  Yes, ma'am.  There's, there's a

23   transcript -- what we are hoping in discovery, because there is

24   a transcript, we believe that there are some serious errors in

25   the transcript.  There's also a recording of the transcript.

1          What we're hoping to get in discovery is the actual

2    recording to actually compare it to the transcript so that

3    those two can be compared adequately so that we can get a very

4    accurate record of what happened at that hearing.

5          The one thing -- there's a few very troubling things

6    that we know that happened at the hearing.  First of all, it

7    was -- the investigator provided simply summary evidence of

8    these are what's said, not who said them, no way to actually

9    test that.

10          Of course, as the Court pointed out, there was a very

11    critical retraction from, from one of the witnesses that had

12    the very serious --

13          THE COURT:  That was the most serious allegation, I

14    think.

15          MR. BINNALL:  The most serious allegation.

16          And the other, the other allegations -- the only

17    other allegation that involved touching is an allegation that

18    was denied categorically in which my client passed a polygraph

19    examination for.  Now, that polygraph examination may very well

20    not be admissible in this court, but you can't very well say as

21    a matter of due process that it's due process for me and not

22    for thee, or it's rules of evidence for me and not for thee is

23    probably more accurate for me to say, where they get in -- they

24    get to go in and provide summary evidence, with no opportunity

25    for my client to test that through any kind of

1    cross-examination or other questions, not necessarily direct

2    cross-examination but some method to actually question the

3    veracity of the evidence against my client, and it's just

4    summary evidence, and based on the -- and it's really

5    interesting that when the hearing officers make the decision,

6    they base it on the veracity not of the people who are

7    witnesses but only because they believe the school official,

8    only because they believe the investigator, not on what the

9    evidence is.

10          So you have this, this summary evidence that's

11    presented against my client, and then my client comes up,

12    testifies himself, is subject to questioning.  He presents a

13    polygraph examination showing no deception indicated, something

14    that is from a reputable polygraph examiner, a psychosexual

15    risk analysis showing that he's no risk there, other evidence

16    that is really, as you can see from the report, just really not

17    considered.  And they take and go into detail in the report

18    about the allegations and just disregard that other testimony

19    for him completely.

20          And so that's the problem with the -- just some of

21    the problems that we really have that we've pled with the, with

22    the hearing itself is it was a predetermined result.  It didn't

23    matter if my client had come in with Clarence Darrow.  It was

24    not going to be something that he had a fair shot with.

25          THE COURT:  How long was the hearing, do you know?

1          MR. BINNALL:  Your Honor, I haven't pled that.  I

2     know that in the back of my head.  My client's father is in the

3     courtroom, and he would probably have a better idea, if I could

4     ask him.

5          The other question is how much time, I think, was

6     really allotted for my client's presentation of the case would

7     be, I think, an important question.

8          THE COURT:  Well, as you, as you both know, I wanted

9     to see the report that came out.  It's a relatively short

10    report, and actually in terms of substantive findings, it's

11    very short.  Most of the report has to do with the procedures,

12    you know, what rights you have for appeal and that sort of

13    thing.

14         Again, the problem is if this were any other kind of

15    a proceeding, the -- I would have no problem in finding on the

16    record I have before me at this point that there was inadequate

17    due process.  It does not strike the Court that this would have

18    been an adequate hearing.  You can't have that kind of double

19    hearsay with the key witnesses, where one has made a major

20    retraction.  I just can't find any -- that that would work.

21         The trouble is the law appears to indicate that for

22    students, their scope of their rights is much, much less than

23    it would be for you or I if we were in this kind of a -- for

24    you or me if we were in one of these hearings, and that's the

25    legal hurdle that I see in this case that I'm sure you

1    appreciate.

2         MR. BINNALL:  I do appreciate that, Your Honor.  And

3    I do these cases actually all over the country, and one

4    interesting thing that's going on in the development of this

5    law is the law in this area has developed pretty substantially

6    just over the last few years since the prior administration's

7    Office of Civil Rights became very active in going after

8    schools in their funding for Title IX purposes, and it caused a

9    bit of a wave in the other direction.  So courts are looking at

10   this now, and they're coming to a very different conclusion.

11        Now, we don't have a lot of Fourth Circuit law on

12   that yet.  That's still building.  It's still to come.  Judge

13   Ellis has had a couple of interesting cases here that have

14   dealt with some of these issues, and some other places have.

15        The Sixth Circuit has dealt with this probably more

16   than any other circuit right now as well as some out of the

17   Second, and the Sixth Circuit is reaching a different

18   conclusion, that there has to be meaningful due process, and

19   this goes, goes back all the way to *Goss* in the, in the '70s,

20   where it doesn't have to be the same process that you would get

21   in a courtroom, but it has to be meaningful, and it has to be

22   actual due process.

23        So just coming in and having what some schools have,

24   which is a single investigator model where there's actually no

25   hearing, and this is only a slight step above this, because you

1    have an investigator that conducts a very, very limited

2    investigation and just says -- comes in and essentially says:

3    I believe the sole witnesses that I interviewed, even though

4    there's all this other body of evidence that I didn't even look

5    at.  I believe these witnesses, not going to give any other

6    relevant information about their veracity other than to say

7    that one witness, the most important witness, recanted a

8    critical part of her allegation.

9         And with -- and so these courts, the Sixth Circuit,

10   the Second Circuit, and some other circuits, are saying no,

11   that's not enough.  You don't get there.  Due process has to be

12   more substantive than that.  It has to -- while you don't have

13   to have a moot court system going for these things, it has to

14   be meaningful.  You have to have some method, for instance,

15   just recently held in a case I think we cited, the *Doe v.*

16   *University of Cincinnati* case, you have to have some method to

17   question the accuser, for instance.  It doesn't have to be that

18   it's face-to-face.  It can be some method of submitting

19   questions that are then asked through, through a hearing

20   officer, but there has to be some method of confrontation.

21        And the way that the law is, is developing on this

22   all over the country right now is that there needs to be more

23   due process for these students because someone like John Doe

24   No. 2, his future and his career is very, very substantially

25   compromised by this unless we find a way to balance the need,

1   and there is certainly a need, of protecting victims of

2   assault, with at the same time providing everyone due process

3   to make sure that something equally bad doesn't happen, which

4   is people are stained for the rest of their lives for something

5   they didn't do.

6           THE COURT:  Okay.  Well, here's what I'm going to do

7   today:  There are a couple of very simple issues in the motion

8   to dismiss.  The first is that the Fairfax County Public

9   Schools is not a proper defendant, that it should be the School

10  Board, and you really haven't opposed that, and I think to

11  clean up the complaint, that's proper.

12          MR. BINNALL:  And based on what they said in their

13  reply --

14          THE COURT:  Yeah.

15          MR. BINNALL:  -- I think we're clear that the School

16  Board is on the hook for Title IX.

17          They're the only entity.

18          THE COURT:  Right.  So we're going to grant that part

19  of the defendants' motion.  And also, that the Title IX claims,

20  that's Count 1, really would only apply to the School Board.  I

21  don't think they can go to individuals.  And I think you're

22  agreeing with that.

23          MR. BINNALL:  We agree, Your Honor.

24          THE COURT:  So we're going to clean up the complaint

25  in that respect as well.

1          At this point, I'm going to allow the Title IX claim

2     to go forward as to the School Board.  I am concerned about

3     this case.  The First Amendment issue is a really interesting

4     one.  As I said, at this point, I'm going to let that case --

5     that count go forward.  I'm not sure that it really -- the kind

6     of speech involved here would under *Tinker* really -- and also

7     under the circumstances as you've depicted them, which is most

8     of them not made directly to the alleged victims but overheard,

9     I think we have to have a more developed record on that issue.

10          So I'm going to grant the motion to dismiss in part

11     and deny it in other respects.  I'm going to strongly urge both

12     sides to think as carefully and creatively as possible to see

13     if there is some equitable and appropriate way that this might

14     be resolved.  It may not be, and as I said, I will be watching

15     the law as it evolves in this case, but if I haven't already --

16     and I don't think we've issued a scheduling order -- yes, we

17     have, all right.

18          So discovery has started; is that correct?

19          MR. BINNALL:  Yes, Your Honor.

20          THE COURT:  Yes.

21          MR. BINNALL:  I think initial disclosures are due

22     today.

23          THE COURT:  All right, that's fine.  So that's my

24     ruling in this case.  Thank you.

25          MR. KINNEY:  Your Honor, if I may?

1        THE COURT:  Yeah.

2        MR. KINNEY:  I didn't hear a ruling as to the due

3   process claim.

4        THE COURT:  Oh, the due process claim, I thought you

5   picked that up at this point.  At this point, I'm leaving that

6   issue in, yeah.  That's part of what the discovery is going to

7   develop one way or the other, yep.  Thank you.

8        MR. BINNALL:  Thank you, Your Honor.

9                        (Which were all the proceedings

10                        had at this time.)

11

12                   CERTIFICATE OF THE REPORTER

13      I certify that the foregoing is a correct transcript of

14   the record of proceedings in the above-entitled matter.

15

16

17   _____/s/_____
                                   Anneliese J. Thomson
18

19

20

21

22

23

24

25