**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1702

JOHN DOE 2, by and through his Father and Next Friend, John Doe 1,

    Plaintiff - Appellant,

    v.

THE FAIRFAX COUNTY SCHOOL BOARD; FAIRFAX COUNTY PUBLIC SCHOOLS; JOHN BANBURY, employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally; EILEEN HOPPOCK, employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally; NANCY KRELOFF, employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally,

    Defendants - Appellees.

No. 19-1717

JOHN DOE 2, by and through his Father and Next Friend, John Doe 1,

    Plaintiff - Appellee,

    v.

THE FAIRFAX COUNTY SCHOOL BOARD,

    Defendant - Appellant,

    and

FAIRFAX COUNTY PUBLIC SCHOOLS; JOHN BANBURY, employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally; EILEEN HOPPOCK, employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally; NANCY KRELOFF, employees of Fairfax County Public Schools sued in his or her official and individual capacity, jointly and severally,

            Defendants.

------

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Leonie M. Brinkema, District Judge. (1:18-cv-00846-LMB-TCB)

------

Submitted: September 11, 2020                                                Decided: October 21, 2020

------

Before RICHARDSON and QUATTLEBAUM, Circuit Judges, and SHEDD, Senior Circuit Judge.

------

Affirmed by unpublished per curiam opinion.

------

Subodh Chandra, Donald P. Screen, Ashlie C. Sletvold, CHANDRA LAW FIRM, LLC, Cleveland, Ohio, for Appellant/Cross-Appellee.  Michael E. Kinney, TURNER & KINNEY, Leesburg, Virginia, for Appellees/Cross-Appellants.

------

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

After three female students accused John Doe 2 ("Doe")—then a high school sophomore—of inappropriate sexual comments and touching, administrators at Lake Braddock Secondary School ("Lake Braddock") suspended Doe for ten days before eventually transferring him to a different school. Thereafter, Doe, by and through his father, filed the instant action against the Fairfax County School Board ("the Board"), alleging sex discrimination, in violation of Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 to 1688; free speech violations under the First Amendment and the Virginia Constitution; and due process violations under the Fourteenth Amendment. The district court granted summary judgment to the Board, and, for the reasons that follow, we affirm.

"We review de novo a district court's grant or denial of a motion for summary judgment, construing all facts and reasonable inferences therefrom in favor of the nonmoving party." *Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co.*, 886 F.3d 346, 353 (4th Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Title IX provides that no person "shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A Title IX plaintiff may pursue a private cause of action against—and obtain damages

from—a "funding recipient [that] engages in intentional conduct that violates the clear terms of the statute." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999).

Citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994), the parties agree that Doe can attempt to recover on his sex discrimination claim under either an erroneous outcome theory or a selective enforcement theory. To prevail on an erroneous outcome claim, a plaintiff must (1) assert that he "was innocent and wrongly found to have committed an offense," (2) establish "facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," and (3) demonstrate "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* By contrast, a selective enforcement "claim asserts that, regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender." *Id.*

Doe was accused of violating the school's sexual harassment policy, which prohibits inappropriate verbal or physical conduct of a sexual nature that creates an intimidating, hostile, or offensive environment. And of the several misconduct allegations lodged against him, Doe admitted: touching a female student between her belly button and pelvic area, though he claimed it was an accident resulting from consensual horseplay; musing that a student with fake fingernails would injure herself while masturbating; and jokingly asking how a girl does not orgasm when inserting a tampon. Although Doe appears to dispute that his conduct was sanctionable, we agree with the Board that Doe's admissions belie any assertion of innocence and, thus, defeat his erroneous outcome claim.

However, even if Doe had maintained his innocence, we discern no evidence from which a reasonable jury could find that anti-male bias animated the proceedings, as necessary to prevail under either theory. In arguing otherwise, Doe points to a high-profile scandal involving sexual harassment allegations against the male coach of Lake Braddock's girls' basketball team. Doe posits that the hypersensitive atmosphere created by the basketball scandal resulted both in an uncritical investigation into his own alleged misconduct and, ultimately, a decision that reflected an eagerness to blindly credit female accusers over male suspects. This theory, however, is rife with speculation. Indeed, drawing from the evidence on which Doe relies, there are several other plausible explanations for an erroneous but lawful outcome, such as an elevated sensitivity to sexual harassment in the context of high school athletics, an overcorrection for the perceived mishandling of the basketball scandal, or simply a desire to believe all accusers, male or female. None of these explanations necessarily involves any sort of improper gender discrimination; thus, without more, any inference that the basketball scandal created an inhospitable climate for males accused of sexual misconduct would "necessarily be based on speculation and conjecture." *Matherly v. Andrews*, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks omitted). For this reason, we conclude that the district court properly granted summary judgment to the Board on Doe's sex discrimination claims.

To establish a procedural due process violation, a plaintiff must show "deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . without due process of law." *Kerr v. Marshall Univ. Bd. of Governors*, 824 F.3d 62, 80 (4th Cir. 2016) (emphasis and internal quotation marks omitted). In the educational context,

"students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Goss v. Lopez*, 419 U.S. 565, 579 (1975). For "a suspension of 10 days or less, . . . the student [must] be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. A formal proceeding is not necessary; rather, due process requires only "an informal give-and-take between the student and the administrative body dismissing him that would, at least, give the student the opportunity to characterize his conduct and put it in what he deems the proper context." *Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 85-86 (1978) (internal quotation marks omitted).

Consistent with his position at summary judgment, Doe claims that, prior to the hearing, he was not notified who his accusers were or what he was accused of doing. But Doe presented a different version of events in his complaint, alleging that an assistant principal removed him from class and confronted him with the misconduct allegations made by three of his classmates. Citing this concession, the district court concluded that Doe had received adequate notice of the charges against him.

"It is well-established that even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Bright v. QSP, Inc.*, 20 F.3d 1300, 1305 (4th Cir. 1994) (internal quotation marks omitted); *see Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 347 (4th Cir. 2014) (discussing judicial admissions). Given that the allegations in Doe's complaint conceded the point he now tries

6

to dispute—that is, that an administrator provided Doe with detailed notice of the sexual harassment allegations—and because he makes no attempt to reconcile the inconsistency between his complaint and his postpleading arguments, we discern no error in the district court's reliance on the admissions in Doe's complaint. Furthermore, because the complaint indicated that Doe received a comprehensive summary of the accusations against him, we agree that there is no evidence of a prehearing due process violation.

As to the subsequent disciplinary proceedings, "[d]ue process . . . mandates only that [the accused student] be afforded a meaningful hearing." *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 630 (4th Cir. 2002). Doe primarily contends that he should have been afforded an opportunity to cross-examine his accusers. However, even in the circuits where a right to a cross-examination is available in a school setting, a cross-examination is not required where the accused admits to enough of the underlying accusations to sustain the result. *See Doe v. Baum*, 903 F.3d 575, 581–84 (6th Cir. 2018). Here, Doe admitted to the vulgar jokes and to touching one of the students in violation of the school's handbook. Thus, we reject Doe's contention that his inability to cross-examine his student accusers constituted a due process violation.

Doe also seeks to raise a due process challenge based on several perceived flaws in the school's investigation. Doe's argument, however, seems more addressed to the strength of the charges lodged against him rather than the adequacy of the hearing that followed. Thus, even if Doe is correct that the investigation was lacking, he fails to explain how this shortcoming undermined the efficacy of a hearing where Doe, with the aid of counsel and his parents, was able to directly challenge what he viewed as largely baseless allegations.

7

Doe's remaining procedural due process claims—that he was repeatedly interrupted at the hearing, that one of the school administrators fabricated evidence, and that the hearing officers abruptly ended the hearing—do not find support in the record. Finally, given that Doe was found culpable of inappropriately touching multiple classmates, we cannot accept his claim that the severity of his punishment represented a violation of substantive due process. *See Kerr*, 824 F.3d at 80 (providing standard for substantive due process claims).

Turning to Doe's free speech claims, "[a]lthough students do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate, the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings." *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 434 (4th Cir. 2013) (citations and internal quotation marks omitted). Thus, where student speech is likely to "'substantially interfere with the work of the school or impinge upon the rights of other students,'" school officials are permitted to prohibit or punish such speech. *Id.* at 434-35 (quoting *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969)). In addition, even without evidence of substantial inference, school officials can restrict speech containing "'vulgar and offensive terms' as part of their role in teaching students the 'fundamental values of habits and manners of civility essential to a democratic society.'" *Id.* at 435 (some internal quotation marks omitted) (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 681, 683 (1986)).

Doe asserts that the tampon joke was a private remark that did not disrupt or interfere with school activities. But because the joke was undoubtedly vulgar—a point

Doe does not dispute—we conclude that the district court properly determined that it was not protected speech in a school setting.

Finally, Doe contends that the student conduct manual is facially overbroad, a claim that requires a plaintiff to "demonstrate that a regulation's overbreadth is not only real, but substantial as well, judged in relation to the challenged regulation's plainly legitimate sweep, and also that no limiting construction or partial invalidation could remove the seeming threat or deterrence to constitutionally protected expression." *Hardwick*, 711 F.3d at 441 (ellipsis, brackets, and internal quotation marks omitted). While Doe maintains that the manual's speech restrictions are too broad because they extend beyond speech that causes a substantial disruption, *see Tinker*, 393 U.S. at 513, he overlooks that there are several exceptions to the *Tinker* rule, *see Hardwick*, 711 F.3d at 435 (discussing exceptions to *Tinker*'s substantial disruption requirement). Furthermore, contrary to Doe's argument, the manual plainly contains geographic and contextual limitations that delineate where a student's misconduct is subject to discipline. Thus, we readily reject Doe's First Amendment challenges.\*

---

\* Doe has also abandoned several other causes of action—specifically, his as-applied overbreadth challenge and his state law claims—by not addressing the bases for the district court's unfavorable disposition of these claims. *See Johnson v. United States*, 734 F.3d 352, 360 (4th Cir. 2013) (explaining that appellant abandons challenge to district court's ruling by not meaningfully contesting bases for court's decision).

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*